at all, argument not to exceed 15 minutes. Mr. Pillersdorf, you may proceed for the attorney. I'd like to reserve five minutes for vote. Fine. My name is Ned Pillersdorf. I represent the estate of the two individuals who committed suicide. Once again, we are, I guess, visiting the wreckage of the Arakan's unfortunate legal career in my community. This case is somewhat similar to the oral argument we had back in March in the Hicks v. Coven case. I may just take a moment just to talk a little bit about the chronology of the events and why this case is, well, it's just some factual similarities, but there's some significant legal differences. The Hicks case basically involved the appropriateness or, in our view, the inappropriateness of the hearings the Social Security Administration was conducting. They put 1,500 of my neighbors through these redetermination hearings. We were here arguing about whether or not those hearings were appropriate or inappropriate. 700 of those individuals kept their benefits. 800 lost their benefits. We were able to find volunteer lawyers for about 1,000 of those people. They have now started another round of putting another 2,000 through hearings. Of the 700 who lost their benefits, take that back, excuse me, of the 700 who kept their benefits, two of those were the estates of now the late Leroy Burchett and the late Melissa Jude. The way the defendants have portrayed this case is that somehow we are seeking damages because we were wrongfully denied benefits in terms of the two estates I represent. That's not what we're saying at all. What we're saying here is that the acts of Social Security Administration foreseeably and predictably caused the deaths, the suicide deaths of these two people. Is this under the Federal Tort Claims Act or is it under something else? Federal Tort Claims Act, Your Honor. We had other claims as well. What's your best case to show we would have jurisdiction? I'm sorry, Judge. What's your best case to show jurisdiction here against Social Security Administration? Under the Federal Tort Claims Act, and what I want to focus on is why I went through a little bit of that chronology is our claim is based on these 14 days. Memorial Day weekend of May 2015, just before, the Social Security Administration sent out 900 surprise suspension of benefits letter. Well, it sounds very bad, but I just want to know what kind of a case we've got from this circuit or other circuits to show you can find relief here. Under the Federal Tort Claims Act, and let me cite the Schweikert v. Hansen case, they committed affirmative misconduct. Schweikert v. Hansen is an estoppel against the government case. You're not arguing estoppel against the government, are you? We're arguing they committed affirmative misconduct. Are you arguing estoppel against the government, collateralist? If the government said something and they're not doing what they said, that's a collateral estoppel case. They said you were entitled to benefits, and a typical collateral estoppel case, the Social Security officer says you're entitled to benefits, and they go out and, I don't know, buy a house or whatever, and then it turns out that the government says you're not entitled, and they say, well, you're estopped because you told me, and then you have to have affirmative misconduct. That's a kind of case. That's not what you're arguing in this case, is it? Or is it? That case is the closest I could find to these very Well, I understand, but it's not a collateral estoppel case against the government. It's not, Your Honor. All right. So can we talk about doctrines that come from cases that are relevant to I'm sorry. Can we talk about doctrines that are relevant to your cause of action? Sure. The reason I cited the Hansen case, that talks about at what point can a federal agency do something to make themselves liable under the Federal Tort Claims Act? We alleged affirmative misconduct, and we took that phrase out of that case. And I realize that the facts and the issues, we are not claiming damages because we were wrongfully denied benefits. In fact, my clients went through those You're also not claiming, correct me if I'm wrong, damages because you were misled. Correct. And that affirmative misconduct deals with whether you can recover for being misled. And you can only do it possibly in the case of affirmative misconduct. But since you're not arguing that, I'm having trouble seeing why the exception to the conclusion for something you're not arguing Let me argue where we're coming from. I think there's three instances where the Social Security Administration did things individually and collectively that make them liable under the Federal Tort Claims Act. The three things are, one, under the statute that says they have the right to put these people through redetermination hearings, it says they must do an individual assessment. That's an obligation under the Social Security Act? Yes, sir. It's in their regulations. We cited it to the district court. We pled it. It was never discussed. And the individual assessment Let me tell you right off the problem I have with that. That's a claim under the Social Security Act. And 405H says claims under the Social Security Act. So that's why if you square that under the Social Security Act, you run into a preclusion of jurisdiction under 405H. Or not. That's what they argue. That is, we are alleging they violated the Federal Tort Claims Act because of the three things they did. That's the first thing, which they violated their own regulation. It violates the Social Security Act, basically. Correct. The second thing they did was they sent these 900 people letters saying you got benefits typically nine, ten years ago. You have ten days to send us medical documentation. That's not in the Act at all, Judge. They just made that up. What does it violate, then? Huh? What does it violate? Is it negligence? I mean, what's the cause of action if it's not violation of the statute? It's negligence. What is the legal requirement? It's negligence, then, right? Negligence. Common law negligence? Correct. Is it foreseeable that if you send out 900 surprise letters, they weren't sending them to a random sample of population. These were people who they knew or should have known were prone to suicide. I understand now. You have one statutory claim, one negligence claim. What's the third one? Well, we allege affirmative misconduct and negligence. So it's basically either negligence or violation of the statute. They knew or should have known this was foreseeable. That sounds like negligence. Huh? I'm not arguing with you. I'm just trying to categorize. Yeah, let me. I'm trying to pigeonhole it into something. You've thrown me off a little bit, Judge. Are you with me? What? So basically, you're making a statutory violation claim and a negligence claim. Correct. And the third thing they did wrong, and this crosses over into the Hicks v. Colvin argument, the statute says they must do so immediately. That's a statutory claim, too. Huh? That's a statutory claim. Yes, it is. That is. Two violations of the statute and one negligence claim. And one, the 10-day notice, which there is no statute. They just made that up. I thought you said they violated their own regulation on that one. That's our argument as to two of them, Your Honor. It's important to remember, during this 14-day period, these letters went out, and not surprisingly, right after this, we call it the mission impossible, getting medical records from 10 years went by, it's foreseeable on the 11th or 12th day we had the two suicides. Didn't the letters say they could ask for more time? They did. They did, Your Honor. But to these type of people with these type of problems that take away their benefits, even the promise you have more time, their benefits are cut off. Leroy Birch had immediately, for economic reasons, stopped taking his antidepressants. So the benefits were going to be cut off after the 10-day period, regardless, or they were cut off immediately? Cut off immediately. When the letter was sent out. Correct. The letters are dated, I believe, May 18, 2015. The letters say your benefits are cut off now, and that's the issue. But for the intervention of Congressman Rogers, the only good thing that my vulnerable clients had in their favor was, Congressman Rogers is not an ordinary congressman. He's probably the most influential member, and he intervened. He said what they did was un-American. He said if you don't reinstate the benefits and put these people through hearings, he said words to the effect, it's a matter of life and death. But for Congressman Rogers intervening, I don't know how many more suicides we would have had. The letters said your benefits are cut off now. Yes, you can submit more evidence, but what do they do in the meantime? So this only went on for 14 days, this policy. They enacted a policy. 14 days later they reversed it. I'm sorry, Judge. Regardless of one's sympathy for these people, which I have very great sympathy for, why is this not covered by the discretionary function exemption under the Federal Tort Claims Act? It's not covered by discretionary function. First of all, the immediate lease says shall. The 10-day rule, they just made that up. At what point can an agency do something that they should be held liable? Where is the line? Do you think if they had a 30-day time it would have been okay? Or are you just saying they shouldn't have sent it down at all? They should not have sent out the suspension of benefits letter. Well, they should have sent them out. First of all, they had the immediately problem. They were nine years late in our view. But sending it to these type of people who they knew they had suicidal problems, and it really goes back to the issue that no one, I've never been able to get the district court to address, and my opponent said we didn't address it, but we did. There's a regulation that says they have to do an individual assessment. These 900 letters were all the same except for the name. Weren't the letters, in a sense, setting up the individual assessments by saying to the people present evidence that you do deserve benefits, and we will consider that evidence on an individual basis? That really goes to the appropriateness of the hearings later on. Our issue was a surprise suspension of benefits when under the statute. They had a right to send those letters if they had done it immediately upon notice of fraud or what that statute says. Well, that occurred a long time before the letter was sent out. Absolutely. Four or five years. So they got a benefit that maybe they weren't entitled to. You have astonishing facts here. I see my time is up. You can answer that question. You have astonishing facts here. By the way, this all happened the year before Kahn was indicted. The astonishing facts are why, according to the whistleblower case, the SSA knew of the unfortunate relationship, criminal relationship, between Kahn and Judge Daugherty in 2005 and 2006. Why did they wait to 2015? And you have this astonishing fact, and this sounds like hyperbole, the reason they didn't act sooner was that Judge Andrews, who was in charge of the SSA off in Huntington, engaged in a criminal conspiracy to cover it up. That's not rhetoric. Those are the factual basis of his guilty plea before Judge Reeves. So basically they didn't act immediately because Judge Andrews conspired with Mr. Kahn to do a criminal cover-up. If you want to save your time, I know you had saved five minutes. If you want to save that for rebuttal, that would be fine. Good morning, and may it please the Court. Thomas Pullum for the Acting Commissioner. The District Court's conclusion that it lacked jurisdiction over the plaintiff's claims is correct for two independent reasons. First, the FTCA's discretionary function exception bars the plaintiff's challenge to the manner in which SSA carried out the redeterminations of their entitlement to benefits. Second, Section 405H of the Social Security Act forbids the District Court from exercising jurisdiction under the FTCA over claims that arise under the Social Security Act. I'll start with the discretionary function exception. I think one thing that has been missing from the plaintiff's argument here is any argument as to how the District Court's judgment and analysis was wrong. The District Court was correct that the discretionary function test involves two elements. First, whether there's an element of judgment or choice in the challenged action. And second, whether that action was susceptible to policy analysis. The District Court correctly answered both questions. Your opponent is focusing on the language shall. Yes. How would you address that? I'd be happy to address that. The provision says that there are kind of two interlocking provisions here. The first says that the Inspector General of the Social Security Administration must provide information to the agency as soon as it has reason to believe that fraud was involved in an application for benefits. The second provision says that the commissioner shall immediately redetermine entitlement to benefits if there's reason to believe that fraud was involved. The way these provisions are structured, it employs what this court in Myers referred to as an if-then structure. The duty arises only after an assessment is made with respect to the antecedent condition. So here, OIG had to determine whether there was reason to believe that fraud was involved in benefits. In order to do that, OIG had to undertake an investigation. So the District Court was correct that there is an element of discretion baked into this provision. What Myers described as this if-then structure presents OIG with a choice. Did the condition obtain or did it not? So if the condition had obtained, then there would be a non-discretionary duty? That's correct. And so when OIG issued the referral, which it issued a referral that permitted SSA to move forward in 2015, it said we've provided you with the names of affected beneficiaries and the reasons giving the basis for its reason to believe that fraud existed. And it said there are no objections to moving forward. The statute says that redeterminations won't proceed if a prosecutor objects to doing so, if it will interfere with a criminal prosecution. So that was another step that OIG had to undertake was to verify that with prosecutors. So in 2015, OIG says here's the information, here's the basis for it, and there's no objection to proceeding. Within a week of that notice, which was dated May 12th, SSA sent out the redetermination notices. So I think that is immediately. Is there something that requires that the benefits be terminated immediately when that notification was sent out to the individuals? Or was that a choice, a discretionary choice? That was also a discretionary choice. I would like to address this. I just want to point out that I don't think this was preserved. The plaintiffs offered no argument with respect to the district court's analysis of this issue. Nevertheless, when we look to what they argued in district court and what my fellow counsel has indicated here, he said there was no provision that allowed this. But that gets matters exactly backwards, as this court has recognized in cases like Rosebush and Cole and the Supreme Court recognized in Galbert, where there's no provision, no law or regulation that mandates a course of action. In the absence of such a rule, there is discretion. You're talking about the 10 days now. Well, this applies to both the 10 days and the suspension. So there was no provision that said benefits can't be suspended. In fact, the HALEX says they can. And there's no provision that governs the amount of time that will apply. And in fact, the HALEX says that that's something that will be determined kind of for each case. And those determinations involve not only do they involve an element of choice or judgment, but they are susceptible to policy analysis. SSA can balance the need for fiscal responsibility and the concern that benefits are being wrongly paid, against fairness concerns, against the strength of the OIG's report. And that kind of balancing all that together, they can look at what steps they think will be appropriate. So just so that I understand, there is no regulation or other source of law that said that SSA had to stop paying benefits at the time they sent the notice? That is correct. Nothing required SSA to suspend benefits. And just to be clear, this was a suspension. This wasn't a termination. The actual termination, if it happened, would occur after the redetermination. But the suspension means that the individuals are not receiving their benefits. And for many people, that is their sole source of income. For the time being, they would not be receiving that. And one other, just to be clear on the types of this program that's at issue here, these were disability insurance benefits under Title II of the Act. Those are not need-based benefits. For need-based benefits, there must be a hearing held before the payment of benefits is interrupted. That's required by the Supreme Court's decision in Goldberg v. Kelly. But for Title II benefits, the Supreme Court said in Matthew v. Goldberg that a hearing is not required beforehand. These are people under the age of eligibility for old age benefits under Social Security, right? They must have been disabled and under 63 or whatever. Yes, that is my understanding. I believe they were. But if they're disabled and you say it's not need-based, it certainly is quite possible that many of them are, in fact, in need of their benefits in order to survive, isn't it? It is possible. I just wanted to distinguish between, to make sure the court was aware that these weren't SSI benefits, that are benefits for the indigent disabled. This is an insurance program. They were not SSI, they were disability. That's correct. If it were SSI, and in fact, in response to this fraud, SSA only suspended benefits to recipients of SSDI, disability insurance benefits. If someone received only SSI. That's the holding in Matthews v. Eldridge. I'm sorry? That's the holding in Matthews v. Eldridge. It's consistent with that, yes. Matthews v. Eldridge said that those types of benefits can be terminated without a prior hearing, but SSI cannot, and SSA's actions were consistent with that difference. Thank you. So can you address the 405H issue? I'd be happy to. Section 405H makes the review process that the Social Security Act provides in 405G exclusive. It says that jurisdiction is not available under the FTCA for a claim that arises under the Social Security Act. The Supreme Court in Salfie said that a claim arises under the Act if the Act provides the standing and substantive basis for the claim. The Supreme Court later described this as a broad construction of the provision. Here, plaintiffs in their complaint say that they seek damages for the humiliation, pain, and suffering caused by the suspension of benefits. They claim negligence in carrying out a process required by statute to protect the integrity of the Social Security system. And their negligence claim is based in significant part, if not entirely, on an assertion that SSA violated its statute. All of these lead to the conclusion that these claims arise under the Act. And I think that claim is also compelled, or I'm sorry, that conclusion is compelled by this court's decision in Livingston, which involved a nursing home operator who sought consequential damages from its termination as a Medicare provider. In that case, the nursing home operator had already, had brought its claim before an ALJ, and the ALJ said the state was wrong to terminate the status, so its status under the Act wasn't at issue. What the nursing home operator sought were consequential damages from the termination, so income that it lost out on. Similarly here, the plaintiffs seek similar consequential damages caused by what they claim is negligence in the execution of Social Security administration of its statute. This is also consistent with the congressional design. As the Supreme Court noted in Chilokee when it considered whether a Bivens remedy would be available to people who were harmed, who claimed harm from constitutional wrongs during administrations of benefits programs, the Supreme Court said that Congress provided safeguards to protect the rights of beneficiaries, but didn't provide damages remedy. That same logic, as the Fourth Circuit recognized in Barrett, applies here. This would give plaintiffs a remedy that Congress did not provide in a carefully structured statute governing the benefits program. So these are two independent reasons that you say that the courts lack jurisdiction. That is correct. Two totally separate independent reasons. One, the discretionary function exception, which the district court correctly recognized. The second, the preclusion provision of the Social Security Act, which this court discussed in Livingston. So is Livingston the best case? That's a fairly old case. Is there any more recent Sixth Circuit case? I am not aware of a more recent Sixth Circuit case, but I think it's very instructive, if not binding here. As we said, also consistent with the Supreme Court's analysis in Chilokee. If there are no further questions, we'll ask that the district court's judgment be affirmed. Thank you. Thank you. I'd like to briefly respond to the argument that somehow our claims, I guess the genesis of them, arise under the Act. That's never what we've alleged. The cases he cited, the Southie case, the nursing home case, those people were all claiming we didn't get the benefits we were entitled to. That was their core allegation. That's not what we're saying in this case. We're saying the Social Security Administration was negligent or more than negligent in taking away a surprise notice, taking away benefits when no statute authorized them to do that, imposing a 10-day mission impossible that they just made up. And it's important. The Social Security Administration had, or any agency, had decided to come up with a plan to cause widespread panic and fear that this is it. They preyed on a vulnerable population, made up a 10-day rule. This happened. This is negligence. Is it foreseeable that if you send out a surprise notice to psychologically vulnerable people who in your own records you indicate they've got a history of suicide problems, is it foreseeable they're going to kill themselves? We had two right after the 10 days expired. But for Congressman Rogers, how many? At what point is there a line that the government can't cross? And I think given the astonishing facts of this case, I mean, John Grisham could never have imagined these facts. But that's what we're left with. And to say somehow this is discretionary, I mean, I take a harder view of that. At this point, Khan had not been indicted. There had been national publicity, 60 Minutes, Wall Street Journal. Senator Colburn had said, well, the clients must have been involved, influential member of Congress. There's zero evidence any client was involved. Social Security Administration can't find the first client who ever met Khan. We saw his picture on billboards. So I think there was a political agenda, animus toward these people. They're vulnerable people, powerless people. They're frustrated. Khan's been doing everything. He hasn't been indicted. So let's go after these people. And but for Congressman Rogers, how many more suicides would we have had? Is it your position that there's a cause of action way back when it first came out that Eric Khan was a fraudulent lawyer? They should have done it right then. Should have sent notice to your clients. But they should have done it right then. Should have sent notice. Don't suspend the benefits and have hearing then rather than have us going back nine years and trying to get medical records to prove we were disabled back then. As we discussed in the Hicks v. Coven argument back in March, Judge Separ accurately said, these are travel back in time hearings trying to find records generated ten years ago. It was a mission impossible. This ten-day thing is probably the most egregious part of this, Judge. To tell people you have ten days to get records that were generated ten years ago, not to mention the competence of some of my clients, might as well have been ten minutes. Your primary complaint is the ten-day rule or the cutting out for the benefits? All of the above. Well, I want to go back to the, they should have done an individual assessment. That's their regulation. And there's no discretion. They don't have the right to violate their own regulation. And that was a direct violation. They've never denied that. So we have the individual assessment. They didn't do it immediately. The ten-day notice. Is there, you're mentioning this, they should have done an individual assessment before cutting off the benefits? Is that what you're saying? Yes, Your Honor. So what provision do you rely on? There's a regulation. We cited it. It's a regulation part of their rules. It's a regulation in your brief? It's in there. It's in a footnote. In a footnote. I think it's on page five. Maybe, I don't know if it's in my brief or in the pleadings below, but we've always argued that. And they sent out 900 letters. They were all the same. We've alleged they didn't do an individual assessment. And that's our evidence. I don't have anything else. Anybody has a question? Thank you very much. Thank you both for your argument. The case will be submitted. Would the court call the next case, please?